UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL W.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01589-TPK

**OPINION AND ORDER**

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on August 31, 2020, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 11). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

### I. BACKGROUND

    On February 13, 2018, Plaintiff (who is awaiting gender reassignment surgery) filed her application for benefits, alleging that she became disabled on January 26, 2017. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on December 10, 2019. Both Plaintiff and a vocational expert, Andrew Caporale, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on January 3, 2020. In that decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity her application date. He then found that Plaintiff suffered from severe impairments including depression, anxiety, and autism spectrum disorder. He further determined that Plaintiff's impairments (both severe and non-severe), viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. However, Plaintiff had to avoid concentrated exposure to fumes, dusts, gases, poorly ventilated areas, and concentrated chemicals. Additionally, she could do only simple, unskilled work in a low-stress environment with only occasional decision-making required and with only occasional changes to

the work setting.  Finally, she could tolerate only occasional interaction with supervisors and coworkers, could not work in tandem, and could not interact at all with the general public or with crowds of people.

The ALJ next determined that with these restrictions, Plaintiff (who had no past relevant work) could perform jobs like day worker, cleaner/housekeeper, and assembler of electrical accessories.  The ALJ also determined that these jobs existed in significant numbers in the national economy.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, raises two issues.  She argues, first, that the ALJ erred by rejecting the opinion of Dr. Ippolito, a consultative examiner, to the effect that she might need a job coach.  Second, she asserts that the ALJ erred when he did not accept the opinion of Mr. Ticco, Plaintiff's counselor.

## II.  THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.  It will then discuss the pertinent medical records.

### A.  Hearing Testimony

Plaintiff, who was 37 years old at the time of the hearing, testified, first, that she had been in special education classes in high school and that he lived with his mother and her boyfriend.  she maintained a hobbyist website and was an amateur photographer.  She did not drive due to her anxiety disorder.  Her past efforts to work did not last long.

When asked about physical problems, Plaintiff said that she had asthma but it was generally not an issue.  Otherwise, she was fine.  From a mental standpoint, however, Plaintiff experienced anxiety attacks that occurred without warning and also suffered from depression.  She was anxious about being unable to support herself.  Plaintiff said her disorder affected his ability to interact with others.  She was seeing a counselor at Evergreen Health to treat both anxiety and depression.  The combination of medication and counseling was keeping her from getting worse, but she was not getting any better.  Plaintiff had also been diagnosed with Asperger's syndrome, and that also impacted her ability to maintain relationships with others.

On a daily basis, Plaintiff did some household chores.  She did not take public transportation anywhere.  She had a good relationship with her sister and had two or three close friends.  However, socializing for an extended period of time was hard to do.  Plaintiff spent a good deal of time every day doing photo editing for an online magazine.  About a third of the time, Plaintiff did not come out of her room during the day.  Plaintiff also had occasional outbursts of anger.

Andrew Caporale, the vocational expert, testified next.  He was asked to assume that

Plaintiff had no past relevant work, and was then asked questions about a hypothetical person who had environmental restrictions and who could do simple, unskilled work with other psychologically-based limitations.  The expert said that such a person could be employed as a day worker, a cleaner/housekeeper, and an assembler of electrical accessories.  He also gave numbers for those jobs as they existed in the national economy.  If the same person would be late for work once a week, however, or would miss two days of work per month, that person would eventually lose her job.  The same would be true for someone who was off task for more than 15% of the time or who could not interact appropriately with coworkers and supervisors.

### B.  Summary of the Treatment Records

There are numerous treatment records from Evergreen Health Services, Inc.  Notes from 2017 show that Plaintiff's diagnoses included Asperger's disorder, asthma, morbid obesity, dysthymic disorder, PTSD, ADHD, and panic disorder.  Throughout the year, Plaintiff's mental status was consistently described as normal, and there was some indication that medication appeared to be helping her cope with his anxiety.  A note from March, 2017 reported that Plaintiff's anxiety and depression were much improved.

Plaintiff continued to receive treatment at Evergreen in 2018 and 2019.  She first met with a counselor, Andon Ticco, in July of 2018, and at that time carried a diagnosis of dysthymic disorder, ADHD, panic disorder, and gender dysphoria.  Plaintiff engaged in both individual and group counseling with periodic psychiatric consults.  Mr. Ticco reported on May 10, 2019, that Plaintiff had responded well to medications prescribed to treat anxiety and depression.  Throughout this period the notes do not show many, if any, abnormalities on mental status exam.  Plaintiff completed a number of patient health questionnaires, however, on which the numeric score indicated that she was suffering from major depression of moderate severity as well as severe anxiety.

### C.  The Opinion Evidence

Dr. Janine Ippolito conducted a psychiatric evaluation on April 10, 2018.  Plaintiff told Dr. Ippolito that she could not work due to anxiety, and also reported experiencing a depressed mood, tearfulness, loss of interest in activities, irritability, angry outbursts, fatigue, and difficulty getting out of bed.  Plaintiff also had difficulty making friends and interpreting social cues and was anxious in new or unfamiliar situations.  At the evaluation, Plaintiff's affect was full ranging and appropriate but she reported feeling nervous.  She showed some impairment in attention and concentration but memory skills were intact.  Dr. Ippolito concluded that Plaintiff could deal with simple directions and instructions and had only a mild limitation in the areas of attention and concentration.  She did not think Plaintiff's psychological problems would interfere with daily functioning.  Finally, she believed that Plaintiff should be referred for vocational training and said that Plaintiff  "may benefit from the assistance of a job coach in assisting him in adjusting to attending a work setting and interacting with others."  (Tr. 610-14).

Plaintiff's counselor, Mr. Ticco, completer a treating medical source statement (mental)

on December 3, 2019. He noted that Plaintiff had been attending counseling every 2-4 weeks since July of 2018 and that the response to treatment was "mixed." Plaintiff had a number of symptoms including recurrent severe panic attacks and difficulty thinking or concentrating. Mr. Ticco concluded that Plaintiff would be precluded from performing multiple work-related functions for more than 20% of the workday and that there were six areas in which Plaintiff could not perform at all in a work setting. Additionally, she would be off task for more than 30% of the time and would miss about four days of work per month were she to become employed. Moreover, Plaintiff had an extreme limitation in the ability to interact with others and to concentrate, persist, or maintain pace. (Tr. 670-75).

Plaintiff's mental functional capacity was also assessed by Dr. Blackwell, a state agency psychologist. Dr. Blackwell thought that Plaintiff had no limitation in the area of remembering and understanding short and simple instructions; a moderate limitation in the ability to carry out detailed instructions; a similar limitation in the ability to complete a normal workday or work week without interruption from psychologically-based symptoms; moderate limitations in the ability to interact with others; and a moderate limitation in the ability to respond appropriately to changes in the work setting. Notwithstanding these limitations, Dr. Blackwell concluded that Plaintiff could perform the mental demands of unskilled work activity. (Tr. 105-110).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Dr. Ippolito's Opinion

Plaintiff's first claim of error relates to the suggestion in Dr. Ippolito's opinion that Plaintiff might benefit from a job coach in making an adjustment to employment.  Plaintiff notes that the ALJ found Dr. Ippolito's opinion only "somewhat persuasive" and that he rejected those portions of it indicating that Plaintiff had no limitations in the areas of handling complex instructions and interacting with others.  However, because the ALJ made no comment about the suggestion concerning a job coach, Plaintiff argues that the ALJ violated his duty to provide a complete explanation for why he did not accept that portion of Dr. Ippolito's opinion.  The Commissioner responds that the suggestion in Dr. Ippolito's report about a job coach was just that - a suggestion - and that she did not say that he could not function in a work setting without one.  Consequently, that was not a limitation which should have been included in the residual functional capacity finding.

The Court finds the Commissioner's argument to be persuasive.  As the Commissioner notes, a claimant's residual functional capacity is defined in 20 C.F.R. §416.945(a)(1), which states:

> § 416.945. Your residual functional capacity.
>
> (a) General—(1) Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is *the most you can still do despite your limitations*. We will assess your residual functional capacity based on all the relevant evidence in your case record.

(Emphasis supplied).  An ALJ is permitted to reject limitations that are speculative in nature as not properly belonging in the RFC determination.  *See, e.g., Morales v. Berryhill,* 484 F.Supp.3d 130*,* 146 (W.D.N.Y. 2020).  And it is a reasonable interpretation of the phrasing used by Dr. Ippolito to conclude that Plaintiff did not require a job coach, but only that it would help him if one were available.  An ALJ is allowed to make reasonable inference from the evidence, and there is much evidence, including the treatment records and the opinion of Dr. Blackwell (as well as the balance of Dr. Ippolito's opinion), which supports a finding that Plaintiff could work without needing a job coach.  Therefore, the Court finds no merit in Plaintiff's first claim of error.

### B.  Evaluation of Mr. Ticco's Opinion

Plaintiff's second argument relates to the ALJ's evaluation of the treating source opinion

from Mr. Ticco, Plaintiff's counselor. Noting that the keys to evaluating such an opinion are its supportability and consistency with the balance of the evidence, Plaintiff argues that the ALJ erred when he concluded that the opinion was not consistent with the many normal mental status exam notes and that he should not have discounted it based on Dr. Ippolito's contrary findings. The Commissioner argues that, to the contrary, the ALJ was entitled to consider Dr. Ippolito's conclusions along with all of the other evidence of record in rejecting Mr. Ticco's opinion, and asserts that Plaintiff is simply asking the Court to reweigh the evidence - something the Court is not permitted to do.

The ALJ weighed the various opinions this way. As noted above, he found Dr. Ippolito's opinion somewhat persuasive although he arrived at a more restrictive residual functional capacity finding than she did. He then found Mr. Ticco's opinion not to be persuasive, reasoning that "[t]he extreme limitations described by Mr. Ticco are not supported by his treatment notes or the notes from the claimant's previous therapists, which have consistently shown overall normal mental status exams. [] Mr. Ticco's report is also inconsistent with the evaluation by Dr. Ippolito." (Tr. 20). Lastly, the ALJ found Dr. Blackwell's opinion to be somewhat persuasive, although he believed the evidence presented at the hearing level was more consistent with the additional limitations included in the residual functional capacity finding. *Id*.

Plaintiff does not argue that this explanation given for rejecting Mr. Ticco's opinion is inadequate, but only that the rejection itself is not supported by substantial evidence. However, this Court has consistently held that "when medical opinion evidence is not well-supported by objective medical findings, the ALJ may give limited weight to a physician's opinion." *Cruz v. Colvin,* 278 F. Supp. 3d 694, 700 (W.D.N.Y. 2017). In that case, the Court affirmed the ALJ's rejection of a counselor's opinion concerning marked mental limitations because "the objective mental status exam portion of [the counselor]'s report does not support the marked mental limitations" expressed in his opinion. *Id*. As the Court's summary of the evidence indicates, in this case, Plaintiff's many mental status exams were consistently normal, and the notes show that he was improving and having milder symptoms when treated with medication. There is little, if any, evidence in the treatment notes to support the extreme limitations described by Mr. Ticco - or, at the very least, a reasonable person could draw that inference from the record. This fact, together with the contrary opinions of Drs. Ippolito and Blackwell, is sufficient support for the ALJ's ultimate determination that Mr. Ticco substantially overstated the functional limitations arising from Plaintiff's mental impairments. The ALJ did not, as Plaintiff contends, reject the treating counselor's opinion simply because it was inconsistent with the opinions of the non-examining and non-treating sources, and the use of those sources as additional evidence of inconsistency with the record was permissible. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (" a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence"). There is therefore no merit to Plaintiff's second claim of error.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion

for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

/s/ Terence P. Kemp
**United States Magistrate Judge**